RECEIPT #_____
AMOUNT $_____130-___
SUMMONS ISSUED____
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK._____
DATE____4/28/04____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------X
EDWARD A. TOVREA, individually and on behalf : Case No.
of all others similarly situated,                          :
                                                           :
                          Plaintiff,                       :
                                                           :
          -against-                                        :
                                                           :
VASO ACTIVE PHARMACEUTICALS, INC.,                         :
JOHN J. MASIZ and JOSEPH FRATTAROLI                        :
                                                           :
                          Defendants.                      :
                                                           :
------------------------------------------------------------X

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAW**

**04 - 10851 RCL**

**JURY TRIAL DEMANDED**

MAGISTRATE JUDGE Collings

Plaintiff, by his attorneys, for his Class Action Complaint alleges:

### NATURE OF THE CASE

1. This is a Class Action brought on behalf of plaintiff and all other persons or entities, except for defendants, who purchased or otherwise acquired Vaso ("Vaso" or the "Company") securities (the "Class") during the period December 11, 2003 through March 31, 2004, inclusive (the "Class Period").

2. This action, based on violations of section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), arises out of a series of false and misleading statements and omissions of material fact by defendants regarding Vaso's financial results.

### JURISDICTION AND VENUE

3. This action arises under sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a); and Rule 10b-5 promulgated pursuant to section 10(b) by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. The jurisdiction of this Court is based on section 27 of the Exchange Act, 15 U.S.C. § 78aa; and on sections 1331 and 1337(a) of the Judicial Code, 28 U.S.C.

§§ 1331, 1337(a).

4. Venue is proper in this District under section 27 of the Exchange Act, 15 U.S.C. § 78aa, and section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b). The corporate headquarters of Vaso are located in this District.

5. In connection with the acts and conduct alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails and the facilities of the national securities exchanges.

## PARTIES

6. Plaintiff Edward A. Tovrea, as set forth in the accompanying certification, incorporated by reference herein, purchased shares of Vaso stock at artificially inflated prices during the Class Period as set forth in the accompanying certification and has been damaged thereby.

7. Vaso Active Pharmaceuticals, Inc. is an early stage company focused on commercializing, marketing and selling over-the-counter (OTC) pharmaceutical products, with a particular focus on drugs that incorporate the vaso active lipid encapsulated (VALE) transdermal delivery technology. The Company began its operations as a division of BioChemics, Inc., a biopharmaceutical company focused on the development of transdermal drug delivery systems, in January 2001. In January 2003, it became an independent subsidiary of BioChemics. Vaso Active markets Athlete's Relief and Osteon in the United States. It has begun negotiating agreements with third parties for the marketing of Osteon and Athlete's Relief in the United States and internationally. It also rebranded the deFEET athlete's foot anti-fungal medication product as Termin8.

8. Defendant John J. Masiz was, at all relevant times, Chairman, President and Chief Executive Officer of Vaso Active.

2

9. Defendant Joseph Frattaroli was, at all relevant times, Chief Financial Officer of Vaso Active.

10. Defendants John J. Masiz and Joseph Frattaroli are collectively referred to herein as the "Individual Defendants."

11. The Individual Defendants, by reason of their management positions and membership and ownership of the Company's stock, were at all relevant times controlling persons of Vaso within the meaning of section 20(a) of the Exchange Act. The Individual Defendants had the power and influence to cause Vaso to engage in the unlawful acts and conduct alleged herein, and did exercise such power and influence.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the Class, consisting of all persons who purchased or otherwise acquired Vaso securities between December 11, 2003 through March 31, 2004, inclusive. Excluded from the Class are defendants; members of the immediate families of the Individual Defendants; any entity in which any defendant has or had a controlling interest; and the legal representatives, heirs, successors, or assigns of any defendant.

13. As of March 26, 2004, almost 5.7 million shares of Class A common stock of Vaso were outstanding in an actively-traded and efficient market in which millions of shares were traded during the Class Period. Vaso common stock is traded on the New York Stock Exchange under the symbol "VAPH." The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff, and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class.

Record owners and members of the Class may be identified from records maintained by Vaso or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

14. Plaintiff's claims are typical of the claims of the members of the Class in that plaintiff and each Class member purchased securities of Vaso during the Class Period and sustained injury as a result.

15. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

16. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to seek redress individually for the wrongs done to them. There will be no difficulty in the management of this action as a class action.

17. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class:

(a) Whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) Whether defendants acted wilfully or recklessly in omitting to state and misrepresenting material facts; and

(c) Whether the members of the Class have sustained damages, and if so, what is the

proper measure of damages.

## FACTS

18. Vaso Active manufactures, markets and sells over-the-counter pharmaceutical products. According to the Company, the effectiveness of its products have been significantly enhanced through the incorporation of the Company's proprietary "VALE transdermal" delivery technology.

19. During the Class Period, defendants materially misrepresented that "independent" clinical trials confirmed that its foot cream product - Termin8 - was a "remarkably effective cure" for athlete's foot. Specifically, the Company represented that the clinical trials were conducted by "independent physicians" and reviewed by the New England Medical Center, in Boston, MA. In fact, however, the person who supervised the study was a lone podiatrist hand-picked by Vaso Active's parent company, BioChemics Inc. Furthermore, the New England Medical Center did nothing more than analyze the statistical information gathered by BioChemics Inc. -- something the center does all the time for paying customers. In news articles, the medical center confirmed that it was unable to draw any conclusions about the effectiveness of the product, since it had no hand in selecting the patients and gathering the evidence.

20. On March 31, 2004, financial markets were stunned when the SEC halted the trading of the Company's stock. The SEC release questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors.

**Materially False And Misleading Statements Issued During The Class Period**

21. The Class Period begins on December 11, 2003. On that date, the Company the Company issued a press release announcing the completion of its IPO thereby raising approximately $7.25 million. The registration statement (the "Registration Statement") filed with the SEC in connection with the IPO was signed by Defendants Masiz and Frattaroli, among others. With regards to the Company's products, the Registration Statement, stated, in pertinent part, as follows:

> Although all of our product candidates will be entering established markets, they will be distinct and unique among existing products in those markets in that they will all incorporate the VALE technology. We intend to market these product candidates using this distinction in much the same way as our current products have been marketed. Since these product candidates are in the early development stage, we are not able to predict when these product candidates will be ready for distribution and sale, if ever.
>
> Our current product candidates include:

| Product Classification | Product Description | Total Annual Market Size | Development Stage |
|---|---|---|---|
| Analgesic | Topically applied analgesic | $3.1 billion | Formulation being finalized |
| Toenail fungus treatment | Termin8/Xtinguish derivative topically applied to treat toenail fungus | $800 million | Formula finalized |
| Acne treatment | Topically applied, anti-bacterial, anti-inflammatory Transdermally delivered hydrocortisone | $325 million | In development |
| First aid treatment | Transdermally delivered anitbacterial and Hydrocortisone | $395 million | Formula finalized |
| Hand and body lotion | OTC skin hydration | $1.06 billion | Formula finalized |

| Psoriasis | Transdermal anti-inflammatory anti-itch and skin hydration | - | Formula in development |

22. With regards to certain products and the clinical studies conducted by the Company, the Registration Statement stated, in pertinent part, as follows:

> ... During the course of the 12 month period immediately following this offering, all deFEET branded product currently in circulation will either be sold or removed from circulation and replaced with an identical product which will be commercialized, marketed and sold by us under the name Termin8 and/or Xtinguish. The formulation and functionality of Termin8 and Xtinguish will be identical to that of deFEET.
>
> All three of these products have been through the research and development, pre-clinical study and clinical trial stages and have received FDA approval. They are either currently being marketed and commercialized or will enter the marketing and commercialization phase upon the consummation of this offering.

23. With regards to the clinical studies completed specifically on Termin8, formerly known as deFEET, the Registration Statement stated, in pertinent part, as follows:

> deFEET is a topically-applied, transdermal athlete's foot anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. It employs the VALE drug delivery system to effectively and efficiently deliver a mild antifungal agent called Tolnaftate into the skin surrounding the affected area. In a pilot clinical trial, supervised by independent physicians and analyzed by the New England Medical Center in Boston, MA, 20 severely infected athlete's foot patients were treated and studied over a 42-day period. There were two groups in the study, one treated with deFEET and the other with Schering-Plough's TinactinID. In this study, deFEET eliminated the infection in 90% of the test group in 7 days and 100% of its patient population in 10 days. Tinactin®, which also uses Tolnaftate in the same concentration as deFEET, required 42 days to cure its first patient. These results demonstrate the ability of the VALE technology to deliver Tolnaftate much more effectively than a product not utilizing VALE technology.

24. On December 16, 2003, the Company announced that it had successfully closed on the placement of all of its over-allotment shares. The total over-allotment shares were 217,500 shares

of Class A common stock, placed at $5.00 per share. Combined with the 1,450,000 Class A common shares placed during the Company's TO, Vaso Active raised over $8 in gross proceeds.

25. On February 19, 2004, the Company announced a 3 for 1 stock split of its common stock. Defendant Masiz stated that the stock split was a reaction to strong institutional demand for Vaso Active shares, commenting in pertinent part as follows:

> One of the ways many institutions measure investment appeal is through the liquidity of a security. Recently, there has been significant demand for our common stock at the institutional level. However liquidity has proved to be an obstacle. To help resolve this, the Board of Directors has declared this 3-for-1 stock split to increase our liquidity to the public market place, thus enhancing our securities' appeal to both retail and institutional investors.

26. On March 17, 2004, the Company announced that it had completed a private placement transaction in the amount of $7,500,000 with an institutional investor. The investment which is in the form of an 18 month 2% Convertible Note, is convertible into shares of Class A common stock at a conversion rate of $9 per share, at the option of the investor. In addition, Vaso Active issued to the investor warrants to purchase 166,667 shares of Class A common stock at an exercise price of $8.75 per share. Defendant Masiz, commenting positively on this transaction, stated, in pertinent part, as follows:

> The ability to secure additional funds through the completion of this private placement gives Vaso Active significant new working capital to augment the working capital derived from its IPO. This will enhance Vaso Active's capital base with which to operate and will permit the Company to take advantage of strategic opportunities that arise in the course of growing our business. In addition, the execution of this agreement at a premium to the current market price of our common stock underscores the value of our technology to a material investor.

27. On March 26, 2004, Vaso Active filed its annual report with the SEC on Form 10-KSB for the period ending December 31, 2003. The annual report was signed by defendants Masiz and

Frattaroli. Regarding its Termin8 product, defendants represented that:

> Termin8 is a topically-applied, transdermal anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. Termin8 employs the VALE transdermal drug delivery system to effectively and efficiently deliver a mild anti-fungal agent called Tolnaftate into the skin surrounding the affected area.

28. On that same day, in an article published by TheStreet.com reported, that during a conference to discuss the Company's 2003 financial results and 2004 outlook the company said it expects sales to soar next year because of a number of "strategic" deals it has reached to market Termin8 and other lotions that use its "revolutionary" transdermal delivery system.

29. The statements referenced above in ¶¶ 21-28 were each materially false and misleading when made as they failed to disclose and/or misrepresented the following material adverse facts which were then known to defendants or recklessly disregarded by them:

    (a) that the Company's claims regarding the effectiveness of its Termin8 product were unsubstantiated;

    (b) that the FDA had not fully endorsed certain of its key products; and

    (c) as a result of the foregoing, defendants statements concerning the efficacy of the Company's products, as well as the Company's current and future financial prospects were lacking in a reasonable basis at all relevant times.

30. Then, on March 31, 2004, the markets were stunned when the SEC halted the trading of the Company's stock through April 15. The SEC release questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors.

31. At the time of the trading halt, Vaso Active common shares were priced at $7.59 per share.

32. The market for Vaso Active's common stock was open, well-developed and efficient at all

9

relevant times. As a result of these materially false and misleading statements and failures to disclose, Vaso Active's common stock traded at artificially inflated prices during the Class Period Plaintiff and other members of the Class purchased or otherwise acquired Vaso Active common stock relying upon the integrity of the market price of Vaso Active's common stock and market information relating to Vaso Active, and have been damaged thereby.

33. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Vaso Active's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

34. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Vaso Active's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Vaso Active and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## SCIENTER ALLEGATIONS

35. As alleged herein, defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Vaso, their control over, and/or receipt and/or modification of Vaso's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Vaso, participated in the fraudulent scheme alleged herein.

## COUNT I

### PURSUANT TO SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER
(Against All Defendants)

36. Plaintiff incorporates by reference the allegations of paragraphs 1 through 35 as if fully set forth herein.

37. The reported financial results of Vaso were materially false and misleading, and defendants knew or were reckless in not knowing they were so, because defendants prepared and participated in the issuance of the deceptive and materially false and misleading statements to the investing public, as set forth above.

38. Defendants employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of conduct in an effort to maintain artificially high market prices for Vaso securities in violation of section 10(b) of the Exchange Act and SEC Rule 10b-5.

39. As a result of the dissemination of the aforesaid false and misleading reports and releases, the market price of the securities of Vaso throughout the Class Period was higher than it would have been had the true facts concerning the Company's financial condition been known by the market.

40. In ignorance of the artificially high market prices of Vaso's publicly traded securities, and relying upon the integrity of the market in which that stock was traded- the New York Stock Exchange—Plaintiff and the other members of the Class acquired Vaso securities during the Class Period at artificially inflated prices and were damaged thereby.

41. Had the market known of the true financial condition of Vaso, which was falsely represented by defendants, plaintiff and the other members of the Class would not have purchased or otherwise acquired their Vaso securities during the Class Period at artificially inflated prices at which they did. Hence, plaintiff and the other members of the Class were damaged by defendants' violations of Section 10(b) and Rule 10b-5.

## COUNT II

### PURSUANT TO SECTION 20(a) OF THE EXCHANGE ACT
### (Against the Individual Defendants)

42. Plaintiff incorporates by reference the allegations of paragraphs 1 through 41 as if fully set forth herein.

43. This claim is asserted against the Individual Defendants and is based on section 20(a) of the Exchange Act. Individual Defendants acted as controlling persons of Vaso within the meaning of section 20(a) of the Exchange Act. By reason of their positions as officers and directors of Vaso and ownership of Vaso stock, Individual Defendants had the power and authority to cause or to prevent the wrongful

conduct of herein and did exercise such power and authority.

44. By reason of the foregoing, Individual Defendants are liable jointly and severally with and to the same extent as Vaso for Vaso's violations of section 10(b) of the Exchange Act and Rule 10b-5.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(i) Declaring this action to be a proper plaintiff class action maintainable pursuant to rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and declaring plaintiff to be a proper representative of the Class.

(ii) Awarding plaintiff and all of the other members of the Class damages in an amount to be proven at trial, together with prejudgment interest thereon;

(iii) Awarding plaintiff the costs and expenses incurred in this action, including reasonable attorneys', accountants', and experts' fees; and

(iv) Granting plaintiff and the other members of the Class such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:    April 28, 2004

GILMAN AND PASTOR, LLP

By: *[signature]*

David Pastor (BBO No. 391000)
Peter Lagorio (BBO No. 567379)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906
Telephone: (781) 231-7850
Facsimile: (781) 231-7840

**MURRAY, FRANK & SAILER LLP**
Eric J. Belfi
Gregory Linkh
275 Madison Avenue, Suite 801
New York, New York 10016
Telephone:  (212) 682-1818
Facsimile:   (212) 682-1892

**GLANCY BINKOW & GOLDBERG LLP**
Michael Goldberg
1801 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF BRUCE MURPHY**
Bruce Murphy

265 Llwyds Lane
Vero Beach, FL 32963
Telephone: 561/231-4202

**Attorneys for Plaintiff**

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, Edward A. Torres, ("Plaintiff") declare the following as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Acct. No. | Shares Involved | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 1500 | VAPH | Buy | 3/24/00 | $3.30 |

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below:

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of April, 2004.

_____          Edward A. Torres
Signature                                 Print Name